## JACOB WINDMILLER

*v.*

## O. D. LEACH.

*Opinion filed February 21, 1902.*

REAL PROPERTY—*purchaser, after tax foreclosure, takes title as it then stands.* If land is sold under a valid decree foreclosing a lien for drainage taxes and assessments, a subsequent purchaser from the owners of an undivided interest in the land takes the title as it then stands, and cannot maintain a bill for partition regardless of the decree of foreclosure and sale, which is set up as a defense.

WRIT OF ERROR to the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

EDWARD DOOCY, for plaintiff in error.

WILLIAM MUNFORD, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This writ of error was sued out by Jacob Windmiller, one of the defendants below, to reverse a decree in partition wherein it was adjudged that defendant in error, O. D. Leach, was the owner of the undivided half of the land in controversy, one hundred and twenty acres, in Pike county. The decree, following the prayer of the bill, also adjudged three certain mortgages which had been given on the whole tract, and a decree foreclosing the same, and a sale and deed made by the master in chancery to Windmiller, to be clouds upon the title of Leach to said undivided half, and removed the same. Prior to the acquisition of their interests by these litigants, Anthony Roy and Matthew B. Curtis appear to have owned the land in equal parts, as tenants in common. Roy lived on the land and Curtis lived in St. Louis. Roy, assuming to be sole owner, gave said three mortgages, one to Windmiller, one to Strauss and one to Mest, to secure his individual debts. Curtis died in St. Louis, leaving a

widow and heirs resident there. The mortgagees fore-closed, making Curtis' heirs parties by the name of "un-known heirs of M. B. Curtis, deceased," and gave them notice by publication. They did not appear, but were defaulted. There was a decree of foreclosure and sale, followed by a master's deed of the land to Windmiller.

The chancellor held that there were no sufficient alle-gations in the bill in the suit foreclosing these mortgages, nor findings in the decree, to bar or estop the Curtis heirs from asserting title to the interest in the lands which had descended to them from their father. We do not find it necessary to consider this branch of the case, inas-much as the decree must be held erroneous and be re-versed for another reason.

In his answer to the bill in this case Windmiller set up another and subsequent foreclosure suit brought by the People, for the use of the Sny Island Drainage Dis-trict, in the court below, to foreclose a lien for levee and drainage taxes and assessments on said lands. The widow and heirs of Curtis, deceased, owning an undi-vided half of said land, were by their individual names made parties to that bill, and service was had by pub-lication and the mailing of notices, as required by the statute. No contention is made that the notice was not sufficient to confer on the court jurisdiction to conclude them and their interest in the property by its decree in that suit. That suit proceeded to a final decree foreclos-ing said lien for taxes and assessments to a large amount and ordering a sale of the land. The land was sold by the master in pursuance of the decree, and was purchased by Windmiller at such sale before the defendant in error, Leach, obtained conveyance from the heirs of Curtis of the interest in the property which he afterward asserted and now asserts in this case. These taxes and assess-ments were a lien on that interest, and it was, with the rest, sold to satisfy it. By his purchase Leach took the title as it then stood, and he occupied no better position

than his vendors. They then had no interest except a right to redeem from the sale within the period allowed by law. That suit, and the proceedings thereunder, were not set up in the bill in this case. It appears also that before he became the purchaser of the Curtis interest, Leach advised the bringing of the suit to foreclose the lien for taxes and assessments, to the end that the title to the land might thereby be cleared and that he might obtain it by purchase at the sale, or from Windmiller on some agreement between them. But it is not necessary to determine whether he is estopped by these facts, for if he stood in the position of his vendors he could not, after the final decree and the sale of the land to Windmiller in the last mentioned foreclosure suit, obtain title from the Curtis heirs, and then, by his bill for partition, obtain a decree for said interest without regard to said decree and sale. The bill in this case does not seek to impeach that decree on any ground, nor does it contain any allegations respecting it, or the foreclosure proceedings in which it was rendered. It was error for the chancellor to wholly disregard it, even though defendant in error was adjudged to pay, as his part of the taxes and assessments, one-half the amount paid by Windmiller on his purchase at the master's sale. If defendant in error, as complainant in the bill in this case, sought to avoid the effect of the foreclosure suit and the decree and sale rendered and made therein, he should have amended his bill on the coming in of the answer, and supplied the necessary allegations. As the pleading stood he was not entitled to any relief against the rights of Windmiller acquired in that suit, even if the proof justified it, and the decree in that respect is clearly erroneous.

The decree is reversed and the cause remanded.

*Reversed and remanded.*